# In the Matter of the Marriage of

## Dale J. OLESBERG,
*Respondent,*
*and*

## Connie L. OLESBERG,
*Appellant,*
*and*

## Nathan OLESBERG,
A Child Attending School.

C030288DRB; A125072

136 P3d 1202

Margaret H. Leek Leiberan argued the cause for appellant. With her on the opening brief was Case & Dusterhoff, LLP. With her on the reply brief was Mason & Associates.

Mark Johnson argued the cause for respondent. With him on the brief was Johnson Renshaw & Lechman-Su PC.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

Wife appeals from a judgment of dissolution of the parties' 27-year marriage, seeking an increase in the amount and duration of spousal support and an equal share in an account consisting of the proceeds of an inheritance from husband's mother. On *de novo* review, ORS 19.410(3), we agree with wife that she is entitled to additional spousal support and that that support should be indefinite and we modify the spousal support award accordingly. We also conclude that the trial court erred in finding that husband had rebutted the presumption of equal contribution as to the inheritance and we modify the property division to award wife one-half of the account bearing the inheritance proceeds.

The parties were both 47 years old at the time of trial and in good health. They were married in 1976 and separated in 2001. The parties met in high school and married when husband was in his second year of college in Idaho. While husband completed college, wife worked full time and husband worked part time. In 1978, they moved to Portland so that husband could attend dental school. Wife found a job checking groceries at Safeway and became head checker. Husband's parents helped the parties financially in the early part of their marriage, including payment of tuition and a house down payment. Husband graduated from dental school in 1982 and, in December 1982, the parties jointly purchased a dental practice. For the first few years, the dental practice earned little or no income and wife supported the family with her full-time employment. The dental practice began to turn a profit in 1985 and the parties' income from the practice has increased over the years. Wife worked full time at Safeway until 1985, when their third child was born, at which time she began working three days a week. In 1986, wife quit work to stay home with the children.[1]

---

[1] The parties have three children and, at the time of trial, two were attending college. Their son, who was 19 at the time of trial, receives monthly support of $370 from wife and $1,130 from husband. The award of child support is not at issue on appeal.

From 1987 to 1994, wife managed the household. She was involved with the childrens' school and other activities. She did all the yard and landscaping work, and even obtained a landscaper's license so that she could buy plants wholesale. She also did all the bookkeeping and billing for the dental practice and worked in the office occasionally. She purchased birthday and Christmas gifts for office staff and hosted the annual Christmas party. In 1995, wife took a part-time job, but continued to manage the family's finances and do all the dental practice billing and bookkeeping until 2001, when the parties separated. At that point, husband took over managing the family's finances.

After husband's father retired, the parties began sending husband's parents money each month, which the parties considered repayment of college tuition and the house down payment. Additionally, husband's parents had a cabin in Coeur d'Alene, Idaho. To help the parents financially, in 1985, husband and wife—together with husband's sister, Janae, and her husband—purchased the cabin and began making monthly payments on a 10-year contract. Husband's brother did not participate in that transaction. Husband's father passed away in 1996, and husband's mother inherited his estate.

Shortly before the parties separated in 2001, husband's mother died. Her estate consisted of her home, the balance due on the Idaho cabin, and some cash. Husband's sister, Janae, was the personal representative of the estate. She set up an account for each beneficiary—Janae, husband, and their brother Mark—and divided the proceeds of the estate equally among them. The estate forgave $45,000 of indebtedness on the cabin. Husband's inheritance from his mother came to approximately $65,000. Husband kept the money in the same account set up by Janae and has never commingled it with the parties' assets. The balance has grown to $87,000.

The record shows that, if she were to work full time, wife could earn approximately $29,000 a year as a property manager. Husband works 32 hours per week in his dental practice, takes approximately 10 weeks of vacation a year, and earns approximately $310,000.

For all their resources, the parties' lifestyle stretched their means. The marital assets consist of the account bearing the proceeds of husband's inheritance from his mother, the family home (with equity of $65,000), a half-interest in the Idaho cabin (valued at $92,500), time shares in Hawaii and Sunriver (valued at approximately $20,000), some stocks (valued at $6,000), and husband's dental practice (valued at $506,000).

The parties incurred significant consumer debt, but kept current on their obligations until husband failed to pay taxes on income from the dental practice for 2001, 2002, and 2003. To satisfy the parties' tax obligation and consumer debt, the parties refinanced their house, and husband borrowed $275,000 secured by his dental practice.

The dissolution judgment awarded husband the dental practice, the Idaho cabin, and the account bearing the proceeds of his inheritance. He is solely responsible for repayment of the $275,000 loan secured by the dental practice, which he will pay over seven years at $4,417 per month. Wife was awarded the family home, free of any obligation to husband. At the time of trial, the home had a value of over $490,000, but the parties' equity was only $65,000. Wife was awarded the time shares and stocks, together valued at $26,000. Wife was also awarded an equalizing judgment of $118,514, payable over 60 months at nine percent interest, with payments of $2,460.16 per month. She is required to pay a credit card debt of $4,644. The only change in the property division sought by wife is an equal division of the inheritance.

The trial court awarded wife spousal support of $4,000 per month for five years ($1,000 compensatory; $3,000 maintenance), then $2,000 for five years ($500 compensatory; $1,500 maintenance). Wife seeks indefinite support of $10,000 per month ($2,000 compensatory; $8,000 maintenance).

We first address wife's contention that the amount of support should be increased. In a long-term marriage such as this, the goal of spousal support is to provide a standard of living comparable to that enjoyed during the marriage. *Mallorie and Mallorie*, 200 Or App 204, 113 P3d 924 (2005), *rev den*, 340 Or 18 (2006). That goal cannot be fully attained

here, because the parties' expenses have exceeded their means, especially during the last few years of the marriage. Both parties agree that neither party will be able to enjoy a lifestyle quite as comfortable as that enjoyed during the marriage, at least for the next several years, until they pay off considerable debt. The trial court's spousal support award represents its attempt to equalize the available resources between the parties in light of their significant debt, most of which will be borne by husband, and we find that the trial court's award of $4,000 per month ($1,000 compensatory; $3,000 spousal maintenance) for the first five years is just and equitable under those circumstances.

■ We conclude, however, that the trial court's spousal support award fails to take into account that, after the debts are paid, husband will have his full income at his disposal. In February 2009, husband will make the last payment on the equalizing judgment to wife; in 2011, he will make the last payment on the $275,000 loan. Both parties will experience a reduction in their expenses after their obligations for child support end and the children graduate from college. At that time, even assuming no increase in husband's disposable income, it will still be 10 times greater than wife's. Considering the factors set forth in ORS 107.105(1)(d)(B) and (C), especially the length of the marriage, wife's long-term contributions to husband's professional success and earning capacity, and the lifelong disparity in the parties' earning capacities, as well as the fact that husband is awarded an income-producing business, we conclude that the parties' anticipated financial circumstances justify a gradual increase in spousal support. *See Timm and Timm*, 200 Or App 621, 632, 117 P3d 301 (2005) (stepped-up spousal maintenance to offset loss of child support payments can be necessary to ensure that a spouse will continue to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage); *see also Grove and Grove*, 280 Or 341, 358, 571 P2d 477, *modified on other grounds on recons*, 280 Or 769, 572 P2d 1320 (1977) (noting that one possible approach to structuring support award would call for relatively lower spousal support payments during the years when the wife is receiving substantial child support payments and a somewhat higher permanent award in later

years after the child support obligation has terminated). At five years from the date of judgment, spousal support should increase to $6,000 per month ($2,000 compensatory; $4,000 maintenance), and at seven years, it should increase to $7,000 per month ($2,000 compensatory; $5,000 maintenance). That level of support will not cause hardship to husband and will allow wife to have a standard of living not disproportionate to husband's and closer to that enjoyed during the marriage.

■     The same considerations lead us to conclude that support should be indefinite. Under the current plan, when husband's support obligation ends in 10 years, wife's income will be $29,000 and husband's will be $310,000. Additionally, husband has the potential to increase his income, but there is no evidence that wife can increase hers. Considering the length of the marriage, wife's substantial and long-continuing contributions to the development of husband's dental practice and professional success at the expense of her own professional development, and the resultant huge disparity in the parties' respective earning capacities, we conclude that indefinite support is appropriate. *See Mallorie*, 200 Or App at 219-20 (describing considerations); *Roppe and Roppe*, 186 Or App 632, 64 P3d 1145 (2003) (permanent spousal support appropriate in long-term marriage to allow spouse to achieve a lifestyle that is not overly disproportionate to the one enjoyed during marriage).

■     The remaining question is whether the trial court erred in failing to award wife an equal share of the account bearing the proceeds of husband's inheritance from his mother. Husband concedes that the inheritance is a marital asset because it was acquired during the marriage and that, like any other gift, it is subject to a rebuttable presumption of equal contribution. ORS 107.105(1)(f);[2] *Kunze and Kunze*,

---

[2] ORS 107.105(1)(f) provides, in part, that a court may provide in a judgment of dissolution

"[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

337 Or 122, 133, 92 P3d 100 (2004). The presumption is rebutted by evidence that the asset was acquired "free of any contributions from the other spouse." *Kunze*, 337 Or at 135.

In *Kunze*, the court held that a finding that the wife "had been the sole object of her aunt's donative intent" overcame the presumption that the husband had contributed equally to the initial acquisition of the inherited asset. 337 Or at 143. Since *Kunze*, we held in *Tsukamaki and Tsukamaki*, 199 Or App 577, 583, 112 P3d 416 (2005), that, when the marital asset is a gift, one spouse may rebut the presumption of equal contribution by evidence that "the other spouse neither contributed to its acquisition nor was the object of the donative intent." 199 Or App at 583. Thus, the evidence necessary to rebut the presumption of equal contribution in this case is that wife did not contribute to the inheritance and was not the object of husband's mother's donative intent.

Wife contends that she contributed to the acquisition of the inheritance because there is evidence that the inheritance is related in part to funds that wife and husband provided to his parents over the years. We find that husband's inheritance did not bear a direct relationship to past financial support that the parties provided to his parents; rather, it was simply the result of an equal division of the mother's estate among her three children, husband and his two siblings. Thus, we find that wife did not contribute financially to the acquisition of the inheritance.

The remaining question is whether husband established that wife was not an object of his mother's donative intent. The trial court, apparently relying on husband's evidence that the estate was simply divided three ways, found that "there was no donative intent from [husband's mother] to [wife]" and held that husband had rebutted the presumption of equal contribution. Wife contends that the trial court erred, because there is no evidence that husband's mother *did not* intend for her to benefit from the inheritance.

We agree with wife that to rebut the presumption of equal contribution, it is not sufficient to show simply that the inheritance devolved only to husband and his siblings in equal shares. The fact that the mother's estate was divided three ways among her children does not establish that she

had no intention to benefit wife, her daughter-in-law of 25 years. If that evidence were sufficient to overcome the presumption of equal contribution, the presumption would not only be rendered meaningless, but it would also incorrectly place the burden on the nonrecipient spouse to rebut it. *See Wilson and Wilson*, 155 Or App 512, 516-17, 964 P2d 1052 (1998) (in determining whether a party has rebutted the presumption, "we consider whether the party seeking to rebut the presumption has produced evidence that his or her spouse was not the object of the donor or devisor's intent and did not otherwise contribute to the acquisition of the gift or inheritance. * * * Mere lack of evidence tending to reinforce the presumption is insufficient." (Citation omitted.)). We conclude that, to defeat the presumption, husband must provide affirmative evidence that wife was not an object of her mother-in-law's donative intent. No such evidence was presented here. *Cf. Ahearn and Whittaker*, 200 Or App 29, 113 P3d 439 (2005) (evidence that the husband's parents' gift to the husband was intended to replace property that he had received before the marriage and given without consideration to a sibling established that the husband was sole object of his parents' intent). Thus, we conclude that the presumption of equal contribution was not rebutted.

If the presumption of equal contribution is not rebutted, then, in the absence of other considerations, the appropriate "just and proper" division of that asset is an equal division. *Kunze*, 337 Or at 134. We conclude on this record that an equal division of the account bearing the inheritance proceeds is just and proper.

Dissolution judgment modified to award wife spousal support of $4,000 per month ($1,000 compensatory; $3,000 spousal maintenance) for first five years, increasing at five years to $6,000 per month ($2,000 compensatory; $4,000 maintenance), and at seven years to $7,000 per month ($2,000 compensatory; $5,000 maintenance), continuing indefinitely; and to award wife an equal share of account bearing proceeds of inheritance; otherwise affirmed.