Argued and submitted January 14, 2015, property division vacated and remanded, otherwise affirmed June 22, 2016

In the Matter of the Marriage of

Theresa Marie BRUSH,
*Petitioner-Appellant,*
*and*

Patrick Jay BRUSH,
*Respondent-Respondent,*
*and*

Melissa Ann BRUSH,
*Adult Child.*

Clackamas County Circuit Court
DR09100365; A152239

377 P3d 620

George W. Kelly argued the cause and filed the briefs for appellant.

Kevin L. Kelly argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Wife appeals a judgment of dissolution, challenging the trial court's property division and its failure to award spousal support. In particular, she argues that the court should not have awarded husband $125,000 of the inheritance that she received from her father—either because the inheritance was not subject to the presumption of equal contribution under ORS 107.105(1)(f)(D) or because, if the presumption applied, she rebutted it. She also contends that the court erred in not awarding her spousal support because, at the time of dissolution, the parties had a significant income disparity and she was unable to meet her expenses without financial help from husband. We conclude that an amendment to ORS 107.105(1)(f), which was enacted during the 2011 legislative session and which removed separately held property acquired by inheritance from the presumption of equal contribution, became effective while the parties' domestic relations proceeding was pending and, under the terms of the legislation, should have been applied by the trial court to the parties' property division. Because the court applied the statute without regard to the amendment, we vacate and remand the property division for consideration under the correct statutory provision. Separately, we affirm the court's denial of spousal support.

The relevant undisputed background facts are as follows. The parties married in 1982, had six children during the marriage, and separated in September 2009. At the time of the dissolution trial, wife was 47 years old and husband was 50 years old. In 2007, wife inherited from her father assets that were worth about $450,000 at the time of dissolution trial. As relevant to this appeal, her father's will devised "the residue of my estate in equal shares to my two daughters." Accordingly, the will did not mention husband. Wife kept the inheritance property separate from the marital estate, in part to protect it from husband's creditors. At the time of trial, wife was earning $2,284 per month and husband was earning between $5,000 and $6,000 per month. During the course of the marriage, however, husband had engaged in a number of failed business ventures.

Wife petitioned for dissolution in October 2009. The dissolution trial took place on four separate days between January and December 2011. The court announced its findings and judgment from the bench on December 14, 2011. As relevant to this appeal, the court determined that wife should pay husband a $125,000 equalizing judgment from her inheritance and that neither party should receive spousal support. The court entered a dissolution judgment reflecting its decision on July 23, 2012. The court vacated that judgment in November 2012 and entered a "corrected" dissolution judgment in April 2013. That corrected judgment, however, did not alter any terms of the judgment that are relevant on appeal.

On appeal, wife asserts that the trial court's property division incorrectly awarded husband part of her inheritance. First, she contends that the trial court erred by concluding that wife's inheritance was subject to the presumption of equal contribution under ORS 107.105(1)(f) (2011), *amended by*, Or Laws 2011, ch 306, § 1. She asserts that the court should have applied ORS 107.105(1)(f), which as amended effective January 1, 2012, removed separately held property acquired by inheritance from the presumption of equal contribution, and that it was error for the court to not apply the amended version of the statute. Second, and alternatively, she contends that even if the presumption of equal presumption is applicable to the parties' proceeding, she presented evidence that successfully rebutted the presumption, and the court erred in concluding otherwise.

For necessary context, we begin by describing the legislature's amendment of ORS 107.105(1)(f), the timing of the dissolution proceedings in this case, and the arguments wife made to the trial court regarding disposition of her inheritance.

When the parties' dissolution trial began in January 2011, ORS 107.105(1)(f)(C) (2011) provided, in relevant part, that "there is a rebuttable presumption that both parties have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held." Accordingly, wife asserted in her trial memorandum that, under the case law that existed as of January

2011,[1] she planned to rebut the presumption of equal contribution to acquisition of her inheritance with evidence that her father had not intended for husband to receive any part of the inheritance.

Meanwhile, during the 2011 legislative session, Senate Bill (SB) 386 (2011) was introduced to counteract our decision in *Olesberg and Olesberg*, 206 Or App 496, 136 P3d 1202 (2006), *rev den*, 342 Or 633 (2007). In *Olesberg*, we concluded that, in relation to the inheritance of one spouse,

> "to rebut the presumption of equal contribution, it is not sufficient to show simply that the inheritance devolved only to husband and his siblings in equal shares. The fact that the mother's estate was divided three ways among her children does not establish that she had no intention to benefit wife, her daughter-in-law of 25 years. If that evidence were sufficient to overcome the presumption of equal contribution, the presumption would not only be rendered meaningless, but it would also incorrectly place the burden on the nonrecipient spouse to rebut it."

206 Or App at 503-04.

As introduced, SB 386 amended ORS 107.105(1)(f) (2011) so that separately held, gifted property was not subject to the presumption of equal contribution. The legislature passed SB 386 in May 2011 and the governor signed it in June 2011, with an effective date of January 1, 2012. Or Laws 2011, ch 306, § 1. As amended, ORS 107.105(1)(f)(D) provided that "[p]roperty acquired by gift to one party during the marriage and separately held by that party on a continuing basis from the time of receipt is not subject to a presumption of equal contribution."[2] SB 386 also provided that the amendments to ORS 107.105 "apply to domestic

---

[1] *See Kunze and Kunze*, 337 Or 122, 134, 92 P3d 100 (2004) (a party seeking to overcome the presumption of equal contribution has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset); and *Olesberg and Olesberg*, 206 Or App 496, 503, 136 P3d 1202 (2006), *rev den*, 342 Or 633 (2007) ("[T]o rebut the presumption of equal contribution, it is not sufficient to show simply that the inheritance devolved only to husband and his siblings in equal shares.").

[2] The amended statute also provided that "'property acquired by gift' means property acquired by one party through gift, devise, bequest, operation of law, beneficiary designation or inheritance." ORS 107.105(1)(f)(D)(ii).

relations proceedings *pending* or commenced on or after the effective date of this 2011 Act." Or Laws 2011, ch 306, § 2 (emphasis added).

In December 2011, near the end of the dissolution trial, wife provided the court with a copy of SB 386 and argued:

> "The Oregon legislature, in this past legislative session, addressed the issue of inheritances. It's—with a copy of the Senate Bill that I've given you, basically, Your Honor, what—what's commonly referred to as the Ol[e]sberg case, * * * the legislators determined or they decided that an inheritance received during the marriage that has been kept separate—as what's happened in this case—does not fall within the presumption of equal contribution. That goes into effect less than 30 days from now, January 1st, and we want it to be part of Your Honor's consideration in determining how to resolve this case."

Later in the trial, wife reiterated her position that she had kept her inheritance separate, and "we think the proper state of the law today is as the legislators drafted it that goes into effect here in 30 days, and * * * there is no rebutting the presumption. The legislature has taken that out."

At the end of the trial on December 14, 2011, the court issued an oral ruling from the bench, finding that wife had kept the inheritance separate, but that she had not rebutted the presumption of equal contribution. Accordingly, as part of the property award, the court ordered wife to pay husband an equalizing judgment of $125,000 "from the inheritance." The court also ruled that neither party would receive spousal support. On July 23, 2012, the court entered the dissolution judgment, which, among other things, reflected the equalizing judgment and the denial of spousal support. Notably, the court never addressed the effect of SB 386 on the case in its oral or written rulings.

Wife contends that, given the timing of the amendment of ORS 107.105(1)(f)(D), the court erroneously applied the presumption of equal contribution to her inheritance. That argument turns on whether the parties' domestic relations proceeding was "pending" on January 1, 2012, the effective date of SB 386. *See* Or Laws 2011, ch 306, § 2 ("The

amendments to ORS 107.105 *** apply to domestic relations proceedings *pending* or commenced on or after [January 1, 2012].") (Emphasis added.) She maintains that, although the trial ended on December 14, 2011, and the trial court made oral rulings from the bench that day, the case was "pending" on January 1, 2012, because the court had not yet entered a written dissolution judgment.

Husband claims that wife failed to preserve her argument because "she never asked the court to apply [SB 386] once it was actually in effect." Husband argues that, because wife "never once" asked the court to apply the new law "during the almost 16 months it took for the court to enter the judgment on appeal," we should conclude that wife failed to preserve her argument.

We reject husband's preservation argument. Our preservation rules function to give a trial court "the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Pragmatically, "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court." *Id.* at 220. And generally, our rules require a party to provide the trial court with an explanation of the party's position that is specific enough to afford the court the opportunity to analyze any alleged error. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

Here, the timing of the trial and the effective date of SB 386 placed the parties and the court in an awkward position—*i.e.*, the trial was wrapping up less than three weeks before SB 386 became effective. Wife presented the court with the pertinent information available at the time: that ORS 107.105(1)(f) had been amended to remove separately held property acquired by inheritance from the presumption of equal contribution, and that the amendment was to become effective within 30 days. Given the nature of the claim and argument, wife provided the trial court with an explanation of her position that was specific enough to afford the court the opportunity to analyze and correct any

alleged error. She informed the court that the legislature had changed the statute, provided the court with a copy of the legislation, and told the court that the amended statute should be part of the court's consideration. Given the circumstances, wife's failure to raise the effect of SB 386 again after trial but before entry of judgment is not a failure to preserve her assignment of error. In short, although it might have been prudent for wife to raise the issue after January 1, 2012, in some manner, she was not required to do so in order to preserve her assignment of error.

Accordingly, we must determine whether the parties' domestic relations proceeding was "pending" on January 1, 2012.[3] If it was not "pending," the amendment to ORS 107.105(1)(f) does not apply, and we must evaluate wife's argument that she rebutted the presumption of equal contribution. Wife urges that the proceeding remained "pending" on January 1, 2012, because the trial court did not enter a written judgment until July 23, 2012, and, until then, the parties' domestic relations proceeding remained unresolved. Husband counters that the proceeding was no longer "pending" on January 1 because the trial judge issued her "final decision on the merits when she ruled from the bench on December 14, 2011." For the following reasons, we agree with wife.

We begin with the meaning of the word "pending," which is "relatively clear" in this context. As the Supreme Court has explained:

"In both ordinary and legal parlance, 'pending' is used to indicate that a matter has yet to be decided. *See Webster's Third New Int'l Dictionary*, 1669 (unabridged ed 1993) (defining 'pending' as 'not yet decided: in continuance: in suspense * * *'); *see also Black's Law Dictionary*, 1154 (7th ed 1999) (adjective 'pending' means '[r]emaining undecided; awaiting decision * * *')."

*Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 458, 31 P3d 421 (2001) (brackets in original). Accordingly,

---

[3] We have been asked to decide only whether a domestic relations proceeding is "pending" after the court has ruled from the bench, but before written judgment has been entered. Accordingly, we do not express any opinion on whether a domestic relations proceeding is "pending" for purposes of SB 386 when a written judgment has been entered, but an appeal of the judgment has not been decided.

whether the parties' domestic relations proceeding was "pending" on January 1, 2012, depends on whether the parties' domestic relations proceeding remained undecided or awaiting decision.

Well-established case law further establishes that a domestic relations proceeding remains undecided until a written judgment is entered, even when the court has ruled from the bench. It is accepted that an oral pronouncement from the bench is not a final determination of the rights of the parties. *Barone v. Barone*, 207 Or 26, 30, 294 P2d 609 (1956). As we stated in *Conley and Conley*, 97 Or App 134, 137, 776 P2d 860 (1989), "a statement from the bench does not constitute an order or a judgment until it appears in a written order or judgment." *See also State v. Swain/ Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974) (noting that "[a] judge may change his mind concerning the proper disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter"). That principle is further reflected in the statutes governing judgments. A "judgment" is defined by statute as "the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document." ORS 18.005(8). A "judgment document" is defined as "a writing in the form provided by ORS 18.038 that incorporates a court's judgment." ORS 18.005(9). And in domestic relations proceedings in particular, ORS 107.115 provides that it is the judgment of dissolution that "restores the parties to the status of unmarried persons" and gives the court "jurisdiction to award, to be effective immediately, the relief provided by ORS 107.105." Taken together, that authority leads to the conclusion that the court's oral statements on the last day of trial were not a final determination of the rights of the parties and, therefore, the parties' domestic relations proceeding was pending on the date that the amendments to ORS 107.105(1)(f) became effective. Thus, the court, having found that wife held the inheritance separately, should not have applied the presumption of equal contribution to it.

Because the court did not analyze wife's inheritance in light of the amendments to ORS 107.105(1)(f), we must vacate and remand the property division for the court to consider wife's inheritance under the appropriate statutory

scheme, and to adjust the property division appropriately. *See Johnson and Johnson*, 277 Or App 1, 16, 370 P3d 526 (2016) (vacating and remanding a property division where we could not "discern whether the court properly considered the statutory exception for gifted assets"); *see also Kunze and Kunze*, 337 Or at 135 (holding that when a party rebuts the presumption of equal contribution to a disputed marital asset, the court decides how to distribute the asset without regard to any presumption and, absent other considerations, it is "just and proper" to award that martial asset separately to the party who has overcome the statutory presumption; however, the court must make a division of all the marital property based on what is "just and proper" in all the circumstances).

That leaves wife's second assignment of error challenging the denial of spousal support.[4] ORS 107.105(1)(d) requires that an award of spousal support be "just and equitable." Wife contends that an indefinite award of $750 per month would have been just and equitable in the circumstances of this case. In particular, she points out that the parties were married for 30 years, wife was a homemaker or part-time employee for most of the marriage, and, at the time of the dissolution trial, husband was earning $5,000 to $6,000 a month as compared to wife's income of $2,284 per month. Husband counters that the denial of spousal support was just and equitable because wife received the "lion's share" of the inheritance, wife had a permanent full time job with benefits (while husband's future employment was uncertain), husband "was a bad businessman and he was bad with money according to everyone in the case," and the parties had a "meager and difficult standard of living" throughout the marriage.

---

[4] The property division in a dissolution case can bear on the court's spousal support award or lack thereof. *See, e.g.*, ORS 107.105(1)(d)(A), (C) (factors to be considered by the court in determining spousal support include "[t]he financial needs and resources of each party"). Here, even though we vacate and remand the property division, given the circumstances of this case and the scope of our remand, we cannot conceive, absent unforeseen circumstances, a situation where wife will end up with less of her inheritance after remand. Therefore, as a result of our remand of the property division, husband will not receive an increase in financial resources. Given that situation, we address wife's challenge to the denial of spousal support.

We have explained previously that "[t]he ultimate determination of what amount and duration of support is just and equitable is discretionary" and that "[w]e will not disturb the trial court's discretionary determination unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105." *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012). Those considerations include "the duration of the marriage," the ages of the parties, the "standard of living established during the marriage," "[t]he relative income and earning capacity of the parties," and a party's "training and employment skills" and "work experience." ORS 107.105(1)(d). The trial court's ruling shows that it considered those factors, and the court's decision to deny spousal support to wife falls within the range of discretion accorded by the statutory scheme. *See Morgan and Morgan*, 269 Or App 156, 166, 344 P3d 81 (2015) ("Our role here * * * is not to make our own determination of the 'just and equitable' amount of spousal support.").

Property division vacated and remanded; otherwise affirmed.